*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FEDERAL HOME LOAN MORTGAGE
CORPORATION,

        Plaintiff/Counterdefendant-Appellee,

v

LESA WERME, also known as LESA J. WERME,

        Defendant/Counterplaintiff-Appellant.

FOR PUBLICATION
January 21, 2021
9:15 a.m.

No. 350981
Allegan Circuit Court
LC No. 18-060665-CH

Before: REDFORD, P.J., and MARKEY and BOONSTRA, JJ.

REDFORD, P.J.

Defendant/counterplaintiff-appellant, Lesa Werme, appeals the circuit court's grant of summary disposition and dismissal of her counterclaims against plaintiff/counterdefendant-appellee, Federal Home Loan Mortgage Corporation (Freddie Mac). For the reasons set forth in this opinion, we affirm the circuit court's grant of summary disposition in favor of Freddie Mac, but remand for entry of an order declaring that Freddie Mac's ownership and possession of the real property resulted in the extinguishment of the mortgage loan debt under the promissory note that it holds associated with the discharged senior mortgage because equity will not permit Freddie Mac a double recovery.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Werme owned property commonly known as 671 Spear Street, Saugatuck, Michigan, and during 2004 granted two mortgages on the property to secure two loans. First, she obtained a $330,400 mortgage loan from NovaStar Home Mortgage, Inc. and she granted its nominee, Mortgage Electronic Registration Systems, Inc. (MERS), a mortgage on the property to secure the loan. A little over one month later Werme obtained a $46,000 personal line of credit secured by a second mortgage on the property that she granted to Huntington National Bank (HNB). Werme later obtained an increase in the HNB loan and agreed to a modification of the HNB mortgage. During 2008, Freddie Mac acquired ownership of the promissory note secured by the senior mortgage on the property. Mortgage Center, LLC serviced that loan for Freddie Mac. Werme defaulted during 2014 on both loans.

In January 2015, MERS assigned the senior mortgage to Mortgage Center, LLC which initiated foreclosure proceedings. Werme sued Mortgage Center, LLC and Freddie Mac in federal court for declaratory and injunctive relief to prevent the foreclosure and for an accounting and damages for alleged unjust enrichment. HNB later foreclosed its mortgage by advertisement, and on November 5, 2015, HNB purchased the property at the sheriff's sale for a full credit bid of $96,000. HNB recorded its Sheriff's Deed on Mortgage Sale on November 12, 2015, in the Allegan County Register of Deeds. The sheriff's deed specified May 6, 2016, as the last day to redeem the subject property. Werme failed to redeem the property. Instead, on May 6, 2016, she sued HNB in federal court to challenge the validity of the foreclosure sale. The federal court dismissed Werme's lawsuit on September 2, 2016, with prejudice for failure to state a claim because she could not establish fraud, irregularity, or prejudice related to HNB's foreclosure.

On July 6, 2017, Freddie Mac purchased the property from HNB which conveyed the property to Freddie Mac by quitclaim deed. On April 5, 2018, Freddie Mac filed in Allegan County district court a summary proceeding for possession of the property. Werme removed the action to federal court and filed a countercomplaint. Freddie Mac moved to remand the case to state court, and the federal court remanded to the state district court and closed the case. On remand from the federal court, Werme moved to transfer the case to the circuit court on grounds that she filed a counterclaim for declaratory and injunctive relief because Freddie Mac had no right to possess the property or evict her from the premises. The district court ordered the removal of Werme's counterclaim to the circuit court on December 20, 2018, but retained the summary proceeding. Werme filed an amended countercomplaint in the circuit court in which she admitted facts related to HNB's foreclosure and that Freddie Mac purchased the property from HNB. She alleged two counts, one for declaratory and injunctive relief and the other for determination of the rights to the property. Werme claimed that she held fee simple title to the property and that Freddie Mac neither owned nor had a right to possess it.

Meanwhile, Freddie Mac moved for judgment of possession in the district court which granted the motion and entered a judgment of possession and ordered Werme to vacate the premises. Freddie Mac next moved for summary disposition in the circuit court which granted its motion. Werme now appeals.

## II. STANDARDS OF REVIEW

We review de novo questions of law, actions to quiet title in equity, as well as decisions to grant or deny summary disposition. *Trademark Props of Mich, LLC v Fed Nat'l Mortg Ass'n*, 308 Mich App 132, 138; 863 NW2d 344 (2014). This Court reviews de novo the grant or denial of summary disposition to determine if the moving party had entitlement to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). In *Maiden*, 461 Mich at 119-120 (quotation marks and citations omitted), our Supreme Court explained:

> A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence. If such material is submitted, it must be considered. MCR 2.116(G)(5). Moreover, the substance or content of the supporting proofs must be admissible in evidence. . . . Unlike a motion under subsection (C)(10), a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive

material. The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant.

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. When deciding a motion brought under this section, a court considers only the pleadings.

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, . . . , in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.

Summary disposition is appropriate under MCR 2.116(C)(10) if no genuine issue of any material fact exists, and the moving party is entitled to judgment as a matter of law. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ. *Id.*

This Court also reviews de novo a decision to grant or deny declaratory judgment, and reviews for clear error the trial court's factual findings regarding such decision. *Ter Beek v City of Wyoming*, 297 Mich App 446, 452; 823 NW2d 864 (2012), aff'd 495 Mich 1 (2014). Clear error occurs "when this Court is left with a definite and firm conviction that a mistake has been made." *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 660; 819 NW2d 28 (2011) (quotation marks and citation omitted).

## III. ANALYSIS

Werme argues that the circuit court erred by granting Freddie Mac summary disposition of her claims for declaratory judgment and determination of rights in the property because she asserts that Freddie Mac must foreclose the discharged first mortgage, and until it does, she continues to hold fee simple title to the property and the right to possess it. We disagree.

Under MCR 2.605(A)(1) a court "may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." In a declaratory action, the plaintiff generally has the burden to prove each fact alleged. *Shavers v Attorney Gen*, 402 Mich 554, 589; 267 NW2d 72 (1978). Under MCL 600.2932, a person may seek to quiet title to real property by bringing an action in circuit court. MCL 600.2932 provides in relevant part:

(1) Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who

claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.

(2) No action may be maintained under subsection (1) by a mortgagee, his assigns, or representatives for recovery of the mortgaged premises, until the title to the mortgaged premises has become absolute, or by a person for the recovery of possession of premises, which were sold on land contracted, to whom relief is available under subdivision (1) of section 5634.

(3) If the plaintiff established his title to the lands, the defendant shall be ordered to release to the plaintiff all claims thereto. In an appropriate case the court may issue a writ of possession or restitution to the sheriff or other proper officer of any county in this state in which the premises recovered are situated.

* * *

(5) Actions under this section are equitable in nature.

"[T]he plaintiff in a quiet-title action has the initial burden of establishing a prima facie case of title, and that summary disposition in favor of the defendant is properly entered if the plaintiff fails to carry this burden." *Special Prop VI LLC v Woodruff*, 273 Mich App 586, 590; 730 NW2d 753 (2007) (citations omitted). If the plaintiff makes out a prima facie case, the defendant then has the burden of proving superior right or title in itself. *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm*, 236 Mich App 546, 550; 600 NW2d 698 (1999); see also *Boekeloo v Kuschinski*, 117 Mich App 619, 629; 324 NW2d 104 (1982). Actions to quiet title are equitable in nature. *Dobie v Morrison*, 227 Mich App 536, 538; 575 NW2d 817 (1998).

Resolution of the issues presented necessarily requires consideration of the legal principles governing promissory notes secured by mortgages on real property and the equities as between the parties. In *Babcock v Young*, 117 Mich 155, 160; 75 NW 302 (1898) (citations omitted), our Supreme Court explained:

It has been held many times in this state that where a negotiable note is given, and a mortgage taken as security therefor, the note is the evidence of the debt, and the mortgage only an incident of the debt; that the mortgage follows the note into the hands of the lawful owner of the note; and that, without any written assignment of the mortgage, the owner of the note is the owner of the mortgage.

This Court has similarly expressed that a mortgage "is a lien on real property intended to secure performance or payment of an obligation." *Prime Fin Servs LLC v Vinton*, 279 Mich App 245, 256; 761 NW2d 694 (2008) (citation omitted). A promissory note secured by a mortgage is personal property that may be transferred by the owner to third parties. *Id.* "A mortgage is a mere security interest incident to an underlying obligation, and the transfer of the note necessarily includes a transfer of the mortgage with it." *Id.* at 257 (citing *Ginsberg v Capital City Wrecking Co*, 300 Mich 712, 717; 2 NW 892 (1942)). "[A] mortgage without an underlying obligation is a nullity." *Id.* at 269 (citing *Ginsburg*, 300 Mich at 717). If the underlying indebtedness evidenced

-4-

by a promissory note is paid, the debt is extinguished and the mortgage is discharged because the mortgage follows the note. *Fox v Mitchell*, 302 Mich 201, 212; 4 NW2d 518 (1942).

"Under general contract law, rights can be assigned unless the assignment is clearly restricted." *Burkhardt v Bailey*, 260 Mich App 636, 653; 680 NW2d 453 (2004), citing Calamari & Perillo, Contracts (3d ed), § 18–10, p. 735. "An assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Id.* (citations omitted). "[A] mortgage is merely a 'chose in action'—a secondary incident to the debt to secure its payment through a lien on specific property." *Id.* at 654 (citation omitted). "A mortgagee may foreclose on a mortgage without producing the note secured by the mortgage." *Sallie v Fifth Third Bank*, 297 Mich App 115, 118; 824 NW2d 238 (2012).

In *Residential Funding Co LLC v Saurman*, 490 Mich 909, 909-910; 805 NW2d 183 (2011) (quotation marks, ellipsis, alteration, and citations omitted), our Supreme Court clarified that a record holder of a mortgage claiming

> status as an "owner of an interest in the indebtedness" does not equate to an ownership interest in the note. Rather, [the] record-holder of the mortgage [] owned a security lien on the properties, the continued existence of which was contingent upon the satisfaction of the indebtedness. This interest in the indebtedness—i.e., the ownership of legal title to a security lien whose existence is wholly contingent on the satisfaction of the indebtedness—authorized [the record holder of the mortgage] to foreclose by advertisement under MCL 600.3204(1)(d).

> \* \* \*

> Under the settled law of this State, the mortgage and the note are to be construed together. The rule is well-settled that the mortgagee has a lien on the land to secure the debt. It has never been necessary that the mortgage should be given directly to the beneficiaries. The security is always made in trust to secure obligations, and the trust and the beneficial interest need not be in the same hands. The choice of a mortgagee is a matter of convenience. Indeed, in interpreting predecessor foreclosure-by-advertisement statutes, in cases in which the mortgagee had transferred a beneficial interest, but retained record title, this Court has unanimously held that only the record holder of the mortgage has the power to foreclose; the validity of the foreclosure is not affected by any unrecorded assignment of interest held for security.

> \* \* \*

> Rather, as explained above, the Legislature's use of the phrase "interest in the indebtedness" to denote a category of parties entitled to foreclose by advertisement indicates the intent to include mortgagees of record among the parties entitled to foreclose by advertisement, along with parties who "own the indebtedness" and parties who act as "the servicing agent of the mortgage."

After foreclosure, the rights and obligations of the parties are fixed by statute rather than controlled by the mortgage. *Senters v Ottawa Savings Bank, FSB*, 443 Mich 45, 52; 503 NW2d

639 (1993). That is because upon foreclosure, the mortgage itself becomes extinguished. *Bank of Three Oaks v Lakefront Props*, 178 Mich App 551, 555; 444 NW2d 217 (1989). In *Trademark Props*, 308 Mich App at 138-139 (quotation marks, ellipses, alteration, and citations omitted), this Court explained the consequence of foreclosure of a mortgage as follows:

> Foreclosure of a mortgage containing a power of sale is permissible by advertisement, provided the proceedings are instituted in accordance with the foreclosure statutes. A foreclosure of a mortgage extinguishes it. And the purchaser becomes the owner of an equitable interest in the mortgaged premises which ripens into a legal title if not defeated by redemption as provided by law. Statutory foreclosures should not be set aside without some very good reasons therefor. A strong case of fraud, irregularity, or some peculiar exigency is required to set aside a statutory foreclosure sale.

Thus, if a holder of a mortgage on real property forecloses, the foreclosure extinguishes the mortgage. *Id*. at 139. "Pursuant to MCL 600.3240, after a sheriff's sale is completed, a mortgagor may redeem the property by paying the requisite amount within the prescribed time limit." *Bryan v JPMorgan Chase Bank*, 304 Mich App 708, 713; 848 NW2d 482 (2014). MCL 600.3236 provides:

> Unless the premises described in [the sheriff's] deed shall be redeemed within the time limited for such redemption as hereinafter provided, such deed shall thereupon become operative, and shall vest in the grantee therein named, his heirs or assigns, all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage, or at any time thereafter, except as to any parcel or parcels which may have been redeemed and canceled, as hereinafter provided; and the record thereof shall thereafter, for all purposes be deemed a valid record of said deed without being re-recorded, but no person having any valid subsisting lien upon the mortgaged premises, or any part thereof, created before the lien of such mortgage took effect, shall be prejudiced by any such sale, nor shall his rights or interests be in any way affected thereby.

The mortgagee who purchases the property at the sheriff's sale and holds a sheriff's deed must wait the statutory redemption period, but when the mortgagor fails to redeem the property within the statutory redemption period, all right, title, and interest in the property vests in the holder of the sheriff's deed. *Trademark Props*, 308 Mich App at 139. Accordingly, "[i]f a mortgagor fails to avail him or herself of the right of redemption, all the mortgagor's rights in and to the property are extinguished," *Bryan*, 304 Mich App at 713, and the mortgagor does not have standing to bring any claim related to the property absent clear proof of fraud or irregularity, *id*. at 713-715.

Upon the expiration of the redemption period, the sheriff's deed becomes operative and vests in the purchaser at the sheriff's sale "all the right, title, and interest" in the property, including the right to possess the property. MCL 600.3236. To effectuate possession, however, the deed holder must seek possession of the premises through summary proceedings under MCL 600.5714 which provides in relevant part as follows:

(1) A person entitled to possession of premises may recover possession by summary proceedings in the following circumstances:

* * *

(g) When a person continues in possession of premises sold by virtue of a mortgage or execution, after the time limited by law for redemption of the premises.

In this case, the following facts are supported by record evidence and the legal consequences that follow cannot be evaded:

(1) During 2014, Werme defaulted under the terms of promissory notes secured by mortgages on the subject real property;

(2) HNB foreclosed by advertisement its second mortgage on the property that secured Werme's $96,000 unpaid HNB loan debt;

(3) HNB purchased the property at the sheriff's sale for the full amount of its credit bid of $96,000;[1]

(4) Werme failed to redeem the property during the statutory redemption period which expired on May 6, 2016;

(5) Instead of redeeming the property, Werme challenged HNB's foreclosure in a lawsuit filed in federal court which the federal court dismissed with prejudice for failure to state a claim because she could not establish fraud, irregularity, or prejudice related to HNB's foreclosure;[2]

(6) All right, title, and interest in the property vested in HNB as a matter of law because Werme failed to timely redeem;[3]

(7) HNB conveyed by quitclaim deed all of its right, title, and interest in the property to Freddie Mac on July 6, 2017;

---

[1] "It is well established that a purchaser at a foreclosure sale of a second mortgage takes the property subject to the first mortgage . . . ." *Advanta Nat'l Bank v McClarty*, 257 Mich App 113, 124; 667 NW2d 880 (2003), citing *Bd of Trustees of the Gen Ret Sys of Detroit v Ren-Cen Indoor Tennis & Racquet Club*, 145 Mich App 318, 324-325; 377 NW2d 432 (1985).

[2] "The principle of judicial comity generally states that foreign courts can afford each other's judgments mutual respect and recognition." *MLive Media Group v Grand Rapids*, 321 Mich App 263, 273; 909 NW2d 282 (2017). Therefore, the principles of comity require a state court "to defer to a federal court ruling when a federal district court is the equivalent of a state circuit court." *Id.* (internal citation, quotation marks, and brackets omitted).

[3] MCL 600.3236.

(8)  As of July 6, 2017, Freddie Mac held all right, title and interest in the property subject to the senior mortgage held by Mortgage Center, LLC;[4]

(9)  Mortgage Center, LLC held by an assignment dated January 13, 2015, the senior mortgage granted by Werme on the property to secure her 2004 mortgage loan in the amount of $330,400, which Mortgage Center, LLC serviced for Freddie Mac since 2008;

(10)  Mortgage Center, LLC initiated the foreclosure of its mortgage in 2015 and Werme filed suit in federal court against Mortgage Center, LLC and Freddie Mac to prevent the foreclosure seeking declaratory relief, an accounting, and damages for alleged unjust enrichment;

(11)  Mortgage Center, LLC discharged its mortgage on August 22, 2017, and recorded its discharge in the Allegan County Register of Deeds on September 15, 2017;[5]

(12)  After three years of litigating, Mortgage Center, LLC and Freddie Mac moved for summary judgment of Werme's claims and the federal court granted the motion because her claim for declaratory relief had been rendered moot by Mortgage Center, LLC's discharge of its mortgage.  The federal court also ruled that Werme established no basis for an accounting, and she failed to factually and legally support her claim of unjust enrichment;

(13)  Freddie Mac commenced summary proceedings in state district court under MCL 600.5714 for possession of the property.  Werme removed the action to the federal court which remanded the case to the state district court.  The district court transferred Werme's countercomplaint against Freddie Mac to the circuit court but not the summary proceedings for possession;

(14)  Freddie Mac moved in the district court for possession of the property and the district court granted Freddie Mac judgment of possession and ordered Werme to vacate the premises;

(15)  Werme appealed the district court's judgment and order and the circuit court affirmed both because Werme failed and could not establish her right to possession having failed to redeem the property.

In this appeal, Werme essentially collaterally attacks the circuit court's affirmance of the district court's judgment by asserting that Freddie Mac does not own and cannot retain possession of the property.  In an effort to support her position, Werme argues that Freddie Mac must foreclose

---

[4] *Advanta Nat'l Bank*, 257 Mich App at 124.

[5] "When a document stating that a mortgage is discharged is filed with the register of deeds, the mortgage is discharged." *Burkhardt*, 260 Mich App at 657 (citation omitted).

the senior mortgage, despite its having been discharged, before it can assert that it holds title to the property. Michigan law does not support her position.

De novo review of the record establishes that Freddie Mac proved its superior right to ownership and possession of the property under the title it holds by virtue of its purchase of the property from HNB following its foreclosure of the junior mortgage and Werme's admitted failure to timely redeem the property. Accordingly, all of Werme's rights "in and to the property" were extinguished absent clear proof of fraud or irregularity in HNB's foreclosure proceeding itself. *Bryan*, 304 Mich App at 713. Werme challenged HNB's foreclosure of the second mortgage and the federal district court dismissed her claims with prejudice because she could not establish fraud, irregularity, or prejudice related to HNB's foreclosure.[6] Therefore, as a matter of law, Freddie Mac had entitlement to entry of judgment of possession under MCL 600.5714(1)(g). The district court did not err by granting Freddie Mac judgment and the circuit court did not err by affirming that ruling.

The record also reflects that in this action Werme did not challenge HNB's foreclosure but conceded that HNB properly foreclosed its mortgage, obtained title when she failed to redeem, and HNB conveyed its interest in the property to Freddie Mac by quitclaim deed. Such necessary concessions completely undermined her claim for a declaration that she owned and had the right to possess the property. Further, the evidence established that she could make no legitimate claim to quiet title to the property in herself. In an action to quiet title, a plaintiff bears the burden of proof to establish a prima facie case of title. *Boekeloo*, 117 Mich App at 628. If the plaintiff fails to meet this burden, summary disposition is appropriate. *Special Prop VI*, 273 Mich App at 590. As a matter of law, Werme could not establish her prima facie case of title to the property having lost it by her failure to redeem. Accordingly, the circuit court did not err by granting Freddie Mac summary disposition of her claims. *Id.*

Werme argued to the circuit court that it should reinstitute the senior mortgage which before being discharged by Mortgage Center, LLC secured the promissory note owned and held by Freddie Mac. Distilled to its essence, Werme's appeal challenges whether Freddie Mac owns and can possess the property while holding the unsatisfied and unsecured debt obligation which it could potentially attempt to collect from her sometime in the future. Werme asserts that, despite her loss of title to the property because of her failure to redeem, she nevertheless owns the property and has the right to possess it. Werme's argument is factually and legally unsupported.

Werme relies on *Ren-Cen*, 145 Mich App 318, to advance her contentions that Freddie Mac has no right to possess the property and evict her from the premises, that Mortgage Center, LLC's discharge of its mortgage is void, and that she, not Freddie Mac, holds fee simple title to the property. *Ren-Cen*, however, does not support Werme's contentions. Nevertheless, the equity principle articulated in *Ren-Cen* guides our decision.

---

[6] *Werme v Huntington Nat'l Bank*, unpublished opinion of the United States District Court for the Western District of Michigan issued September 2, 2016, Case No. 1:16-CV-479. [2016 WL 4578006.]

In *Ren-Cen*, the plaintiff held two mortgages on a property, the first securing a $1.1 million loan and the second securing a $500,000 loan. The property had a fair market value of more than $3 million. The defendant defaulted on both mortgage loans. The plaintiff foreclosed by advertisement on the junior mortgage, purchased the sheriff's deed at the sheriff's sale for the amount owed on the second note, and took possession of the property after the redemption period expired without the defendant redeeming the property. The plaintiff then commenced an action to recover the amount owed on the first note despite its ownership and possession of the property that secured that debt. *Ren-Cen*, 145 Mich App at 319-320.

The defendant could not avail itself of the defense against a party seeking a deficiency judgment as provided in MCL 600.3280, because the statute only applied in instances where a foreclosure sale involved one note and one mortgage. The defendant argued that foreclosure of the second mortgage discharged the promissory note secured by the first mortgage because the property held value exceeding the junior loan debt and possession of the property required deeming the senior debt satisfied. *Id*. at 320-321. A panel of this Court considered caselaw and treatises addressing the consequence of a holder of two mortgages foreclosing on either the first mortgage or the second mortgage. The panel observed that under MCL 600.3236, a purchaser at a foreclosure sale of a second mortgage takes the property subject to the first mortgage, but that the contrary is not true. *Id*. at 322. The panel explained:

> At law, whenever a greater and lesser estate or a legal and equitable estate coincide in the same person, the lesser or equitable estate is destroyed by merger. Equity, however, will generally prevent a merger if the parties did not intend a merger, and an intent to avoid a merger will ordinarily be inferred where it is in the interest of the person holding the various estates to keep them separate. Plaintiff must look to equity here to prevent the merger which would be automatic at law. [C]ases show, equity is of no assistance to plaintiff under the circumstances presented here, because plaintiff seeks to avoid a merger to enable it to obtain, in effect, a double recovery.
>
> The price at a foreclosure sale on a second mortgage is depressed to reflect the outstanding first mortgage. A third party who purchases the property at the foreclosure sale on the second mortgage would have to satisfy the debt secured by the first mortgage in order to prevent the mortgagee of the first mortgage from asserting a superior claim to the property. Because plaintiff itself is the mortgagee of the first mortgage, plaintiff need not concern itself with the possibility that the mortgagee of the first mortgage would assert a superior claim. Plaintiff wants to obtain the price advantage of purchasing at a second mortgage sale without the disadvantage of having to satisfy the debt secured by the first mortgage in order to obtain uninterrupted enjoyment of the property. Equity will not assist plaintiff to achieve such a result. Instead, the debt secured by the first mortgage was discharged when plaintiff acquired the mortgaged property at the foreclosure sale on the second mortgage. [*Id*. at 325-326 (citations omitted).]

Close analysis of *Ren-Cen* discloses that the panel's decision rested on its determination of the equities as between the parties. The panel discerned that, under the circumstances, equity could not permit the plaintiff to enjoy both title to the property and maintain a deficiency action to collect

the debt because the value of its property sufficed to satisfy both loan debts. The panel recognized that equity would not permit the plaintiff a double recovery which would constitute a windfall. Although *Ren-Cen* involved a single party holding both the senior and junior mortgages, we hold that the general equitable principle against double recovery applies under the particular facts of this case.

Contrary to Werme's argument, however, *Ren-Cen* does not stand for the proposition that, once having lost all right, title, and interest in the property because of failure to redeem, one may still claim title to the property and a right to possess it. *Ren-Cen* instead upholds the vesting of title in the holder of the sheriff's deed after the mortgagor has failed to redeem. *Ren-Cen* also supports the title holder's right of possession of the property while protecting the former mortgagor and debtor against claims that would permit double recovery, an inequitable and unjust outcome.

The equitable principle set forth in *Ren-Cen* applies in this case and when applied clarifies the rights of the parties and an equitable and just outcome results. Ordinarily, the foreclosure of a junior mortgage does not impact the senior mortgagee's rights because the senior mortgage rides through the foreclosure and the junior mortgagee takes the property subject to the senior mortgage. *Advanta Nat'l Bank*, 257 Mich App at 124. The underlying debt would have to be satisfied by the new title holder to obtain the discharge of the senior mortgage and release of the encumbrance upon the property. In this case, however, HNB purchased the property and took it subject to the senior mortgage held by Mortgage Center, LLC. Freddie Mac then purchased the property from HNB which conveyed all of its right, title, and interest to Freddie Mac. Accordingly, Freddie Mac held the property subject to Mortgage Center, LLC's mortgage. Freddie Mac, however, owned the debt secured by Mortgage Center, LLC's mortgage. The promissory note and the mortgage were held by separate entities. Mortgage Center, LLC initiated foreclosure of its mortgage and Werme responded by filing suit in federal court to challenge the foreclosure. After protracted litigation and after Freddie Mac obtained title to the property from HNB, Mortgage Center, LLC with Freddie Mac's approval discharged its mortgage and the federal court dismissed Werme's lawsuit. The discharge of the senior mortgage resulted in Freddie Mac's holding an unsecured debt, the collateral and security for the debt's repayment having been given up. Ordinarily in such situation, a creditor may seek to hold the debtor personally liable.

The problem in this case, however, is that it would not be equitable for Freddie Mac to hold Werme personally liable for the outstanding debt underlying the first mortgage because Freddie Mac holds title to and possesses the property, the value of which the parties do not dispute suffices to satisfy not only the debt underlying the second mortgage (on which Freddie Mac foreclosed), but additionally to satisfy the outstanding debt underlying the first mortgage. Although the equitable merger doctrine articulated in *Ren-Cen* does not technically apply in this case because here two separate entities each held a mortgage, the underlying equitable principle against double recovery must apply.[7] We conclude that under the particular facts of this case, Werme is entitled to a declaration that Freddie Mac's ownership and possession of the property satisfied the unsecured debt under the promissory note formerly secured by Mortgage Center, LLC's senior

---

[7] We note that in the matter at bar, Freddie Mac filed an affidavit of its representative in the trial court that stated it would *not* pursue any action for deficiency against Werme.

-11-

mortgage. Freddie Mac cannot enforce the note and hold Werme personally liable for that debt, because equity will not permit Freddie Mac a double recovery.

The circuit court properly ascertained that Werme had neither a legal nor equitable right to own and possess the property, the relief that she sought in this case. The record reflects that the circuit court understood the equitable problem and realized that Werme appeared to be vulnerable to personal liability on the outstanding unsecured debt. The circuit court inquired whether she desired to be released from the debt but Werme declined and argued against declaring the debt satisfied because she wanted ownership and possession of the property. Rather than declaring the debt extinguished, the circuit court granted Freddie Mac summary disposition because, as a matter of law, Werme failed and could not establish her claims for the relief she sought. The circuit court did not err in this regard.

Nevertheless, the circuit court should have declared the rights of the parties more clearly, particularly respecting Werme's personal liability for the debt under the promissory note formerly secured by the discharged senior mortgage. Freddie Mac's having obtained fee title to the property and its judgment of possession, as a matter of equity, extinguished Freddie Mac's right to ever hold Werme personally liable and collect the unsecured debt. The circuit court reached the right result respecting Werme's claims and her lack of entitlement to the relief she sought, but it failed to definitively clarify the parties' rights by setting forth on the record that equity would not permit Freddie Mac a double recovery.

The record reflects that the circuit court accepted Freddie Mac's representative's affidavit testimony that Freddie Mac had no intention of collecting on the outstanding debt and agreed that Freddie Mac likely would be collaterally estopped from collecting the debt because of the affiant's statement. While Werme may be able to assert a defense to a collection action based upon Freddie Mac's stated intention, Werme still faces the potential that Freddie Mac could change that intention, take action to collect the outstanding debt, and force her to have to defend. Accordingly, the circuit court should have exercised its equitable powers and clarified the parties' respective rights by declaring that Freddie Mac could not seek to hold Werme personally liable on the remaining debt, the property having satisfied it.

Therefore, we affirm the circuit court's summary disposition ruling because it correctly concluded that Freddie Mac held absolute title to the property and the right to possess it; nevertheless, the circuit court erred by not declaring that Freddie Mac's ownership and possession of the property resulted in the extinguishment of the debt associated with the discharged senior mortgage because equity will not permit Freddie Mac a double recovery.

Affirmed but remanded for entry of an order consistent with this opinion. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Jane E. Markey
/s/ Mark T. Boonstra

-12-